IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Phillip S. Figa

Civil Action No. 05-cv-02084-PSF-CBS

FOUR CORNERS NEPHROLOGY ASSOCIATES, P.C.,
a New Mexico professional corporation; and
MARK F. BEVAN, M.D.,

    Plaintiffs,

v.

MERCY MEDICAL CENTER OF DURANGO, a Colorado not-for-profit corporation,

    Defendant.

## ORDER SETTING TRIAL LOCATION

This matter comes before the Court following a hearing held before the undersigned on December 1, 2006 to address where this case should be tried. The Court ordered parties to file briefs on the issue seven days prior to the December 1, 2006 status conference. *See* Minutes of the July 21, 2006 Scheduling Conference (Dkt. # 56). Plaintiffs Four Corners Nephrology Associates, P.C. and Dr. Mark F. Bevan filed their brief on November 24, 2006, arguing why the trial should be conducted in Denver (Dkt. # 85). That same day Defendant Mercy Medical Center of Durango ("MMC") filed its brief asserting that if there were to be a trial in this case it should be held in Durango. (Dkt. # 86). Defendant thereafter formally moved for the trial to be transferred to Durango at the status conference on December 1, 2006.

**I. BACKGROUND**

Plaintiffs' Second Amended Complaint (Dkt. # 50), filed July 5, 2006, offers the following summary of their case:

 1.  For over 20 years, Dr. Bevan was a member of MMC's medical staff, providing nephrology physician services to patients at MMC. Then in January of 2005, MMC hired its own nephrologist and opened an inpatient dialysis unit of MMC. Thereafter, MMC, after giving Dr. Bevan numerous and conflicting interpretations of the requirements to maintain medical staff privileges at MMC, ultimately barred Dr. Bevan and his associate nephrologists at FCNA from providing nephrology physician services at MMC by entering into an "exclusive" agreement with MMC's own employee nephrologist. The impact of this decision will allow MMC to monopolize nephrology physician services in the area, reduce patient choice, eliminate competition and result in above-competitive level prices for health plans and consumers.

2.  Dr. Bevan and DaVita, Inc. ("DaVita") have an agreement giving each rights to participate as an equity owner in any new dialysis center opened by either party in the area covered by the agreement, which includes Durango, Colorado. MMC combined and conspired with DaVita, Dr. Mark Saddler and the Southern Ute Indian Tribe to exclude Dr. Bevan and FCNA from practicing at MMC, to prevent Dr. Bevan and his associate physicians from obtaining privileges at MMC, and to appoint Dr. Mark Saddler as the Medical Director of the new dialysis center in Durango.  At the same time, MMC conspired with DaVita, Dr. Saddler and the Southern Ute Tribe to exclude Dr. Bevan from participating in the development and management of the Durango Dialysis Center.

Plaintiff brings the following twelve claims: unlawful monopolization in violation of the Sherman Act, 15 U.S.C. § 2; attempt to monopolize in violation of the Sherman Act, 15 U.S.C. § 2;  monopolization and attempt to monopolize in violation of the Colorado Antitrust Act, C.R.S. §§ 6-4-101 through 122; illegal conspiracies and exclusionary practices in violation of the Sherman Act, 15 U.S.C. § 1; illegal conspiracies and exclusionary practices in violation of the Colorado Antitrust Act, C.R.S. §§ 6-4-101 through 122*; per se* illegal tying arrangement in violation of the

2

Sherman Act, 15 U.S.C. § 1*; per se* illegal tying arrangement in violation of the Colorado Antitrust Act, C.R.S. §§ 6-4-101 through 122; violation of the Colorado Consumer Protection Act, C.R.S. § 6-1-105(1)(n)(III); Colorado common law civil conspiracies, tortious interference with existing and prospective contractual relations, promissory estoppel, and arbitrary, capricious and unreasonable denial of privileges.

## II.  TRIAL LOCATION

Under 28 U.S.C. § 1404(c), a district court has discretion to order any civil action to be tried at any place within the division in which it is pending.  This district encompasses the entire geographic region of Colorado, including the Durango area, where MMC is located and Four Corners Nephrology does business.[1]  *See* 28 U.S.C. § 85 ("Colorado constitutes one judicial district.  Court shall be held at Boulder, Colorado Springs, . . . Denver, Durango, Grand Junction, Montrose, Pueblo, and Sterling.").  Under the Amended Jury Plan adopted by the District of Colorado, jurors in the Denver Division shall be drawn from 24 counties located primarily in the northeastern section of the state, while jurors in the Durango Division shall be drawn from 5 counties from the southwest corner of Colorado.

Although the Tenth Circuit has not had occasion to set out standards for § 1404(c) intra-district transfers, courts within the circuit have relied on the factors developed under 28 U.S.C. § 1404(a), dealing with venue transfers.  *See Bitler v. A.O. Smith Corp.*, 2001 WL 1579378 at *1 (D. Colo., Dec. 10, 2001) ("In deciding a motion

---

[1]  Four Corners Nephrology Associates, P.C. is actually based in Farmington, New Mexico, which is about 50 miles southwest of Durango, but, as evident by its name, operates in the Four Corners region, including southwest Colorado.

for intra-division transfer, courts generally look to the factors relevant under 28 U.S.C. § 1404(a) to a transfer between districts or divisions.") (citing *Grossman v. Smart*, 1995 WL 767893 at *1 (7th Cir., Dec. 29, 1995), *Lavin v. The Lithibar Co.*, 2001 WL 1175096 at *1 (D. Kan., Sept. 19, 2001) and *Shafer v. Union Pac. R.R.*, 1995 WL 561455 at *1 (D. Ore., Sept. 14, 1995)) (footnote omitted).

Under § 1404(a), a district court may transfer a civil action to a different district or division "[f]or the convenience of the parties and witnesses, in the interest of justice." Factors relevant for a § 1404(a) transfer include (1) the plaintiff's choice of forum; (2) the convenience of the witnesses; (3) the accessibility of witnesses and other sources of proof; (4) the possibility of obtaining a fair trial; and (5) all other considerations of a practical nature that make a trial easy, expeditious and economical. *See Chrysler Credit Corp. v. Country Chrysler, Inc.*, 928 F.2d 1509, 1516 (10th Cir. 1991); *Bitler*, 2001 WL 1579378 at *1; *Lavin*, 2001 WL 1175096 at *1. The party seeking transfer has the burden of proving that the existing forum is inconvenient. *Scheidt v. Klein*, 956 F.2d 963, 965 (10th Cir. 1992); *Bitler*, 2001 WL 1579378 at *1.

Here, plaintiffs argue that their choice of forum in Denver should be given great weight. *See* Pls.' Br. Opp. at 5. However, the usual deference to plaintiffs' forum choice is diminished where plaintiffs do not reside in the chosen forum. *See Spires v. Hosp. Corp. of Am.*, 2006 WL 1642701 at *2 (D. Kan., June 8, 2006) (deference to plaintiff's choice of forum was "largely inapplicable" where plaintiffs who opposed a § 1404(c) transfer within the District of Kansas did not live in the area covered by their chosen forum, the federal court sitting in Kansas City).

Plaintiffs in this case are both New Mexico residents. Both maintain their business operations in and near Durango, not Denver. Neither have presented any evidence of doing business in Denver. Moreover, the underlying controversy is unconnected to Denver. Thus plaintiffs' preference for pursuing this action in Denver is entitled to little weight. *See Bailey v. Union Pac. R.R. Co.*, 364 F. Supp. 2d 1227, 1230 (D. Colo. 2005) (in deciding a motion to transfer under § 1404(a), finding that plaintiff's forum choice was entitled to little weight where "[i]t is neither his home nor the place of the accident"); *Dworkin v. Hustler Magazine, Inc.*, 647 F. Supp. 1278, 1281 (D. Wyo. 1986) (plaintiff's choice of forum "is not a significantly more weighty factor than any of the other factors considered here, particularly when the forum's connection to the case is obscure and the forum's connection to the plaintiff is even more so"); *cf. Bitler*, 2001 WL 1579378 at *2 (in determining a § 1404(c) motion to change the place of trial, finding that a nonresident plaintiff is entitled to deference in his choice of forum where there is a factual connection in the case to the chosen forum and where plaintiff resides closer to chosen forum than another location). Therefore, the Court now turns to the remaining factors to consider.

The convenience of the witnesses favors Durango. Both plaintiffs and defendant operate in and around Durango. Defendant's counsel at the December 1, 2006 hearing stated that between 12 and 20 nonparty witnesses located in the Durango area may be called either in its case-in-chief or in rebuttal. Defendant's counsel also represented at the hearing that some of these witnesses are dialysis patients, who require treatment that may make traveling to Denver very difficult. Plaintiffs at the December 1, 2006

hearing noted that two of their witnesses live in the Denver area and two experts are from out-of-state who could more easily travel to Denver.  Also, some of defendant's claimed Durango-based witnesses may not be able to testify because they have not been properly listed in pretrial disclosures or because their testimony may be redundant with that of other witnesses.  Overall, however, the Court finds that the convenience of witnesses, especially in light of the location of parties and of the underlying actions giving rise to this litigation, tips in favor of Durango.  This is also true for the third factor, accessibility of witnesses and other sources of proof.

      Plaintiffs contend that the fourth factor, the possibility of obtaining a fair trial, weighs heavily against Durango.  MMC is the second-largest employer in the area and the Southern Ute Indian Tribe, which plaintiffs allege conspired with MMC, is the largest employer in the area.  Moreover, as MMC is the only hospital in Durango, it is asserted that the jury pool will likely have had a connection with MMC.  Plaintiffs further contend that it will be difficult to seat a fair and impartial jury, as potential jurors from the southwest Colorado area will be concerned about significant judgments against a local community hospital that could result in higher health care costs.  However, such concerns are not supported by evidence and are not otherwise convincing.  Moreover, plaintiffs do not explain why potential jurors from that five-county area where jurors would be chosen might not want to determine neutrally whether antitrust violations are being committed in the delivery of health care services in the vicinity of where they work and live.  Nor do plaintiffs demonstrate why members of that jury pool would tolerate higher health services prices and fewer provider choices for themselves and

their neighbors as a result of the alleged antitrust violations.  Additionally, any potential bias in the jury pool can be adequately ferreted out during the jury selection process, in which counsel will be allowed to participate directly through their own questioning of potential jurors.  Moreover, defendant points out that a possible employment connection to MMC would involve less than one percent of the jury pool.  Employment and other connections between potential jurors and the parties can be uncovered during *voir dire*.  The Court thus finds that the likelihood of either side obtaining a fair trial is not significantly different in either Durango or Denver.

      The fifth factor, other practical considerations that make a trial easy, expeditious and economical, favors Durango for reasons already discussed–all the parties are located in the Four Corners area as are many of the witnesses (and all but one of the fact witnesses), as well as all of the events giving rise to this litigation.  Finally, the Court also finds that the "interest of justice" component of 28 U.S.C. § 1404 favors having a regional jury within the district decide matters based on events arising within that region–issues that are ostensibly unconnected to that part of the state where this Court generally sits and from where its jury pool is usually obtained.  Particularly here, a jury drawn from the five counties in the southwest corner of the state, rather than one drawn from 24 counties located primarily in the northeast quadrant of the state, is better suited and more appropriately asked to determine facts involving parties operating and events occurring in the southwest region.

### III.  CONCLUSION

For the foregoing reasons, the Court GRANTS Defendant's motion to hold the trial to Durango.  It is HEREBY ORDERED that trial proceedings in this case shall be held in Durango pursuant to 28 U.S.C. § 1404(c).  A trial date will be set at the Final Pretrial Conference, which is scheduled for Tuesday, January 16, 2007 at 9:00 a.m.

DATED:  December 6, 2006        BY THE COURT:

*s/ Phillip S. Figa*
_____
Phillip S. Figa
United States District Judge