IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLORADO

Civil Action No. 05-cv-02084-JAP-LFG

FOUR CORNERS NEPHROLOGY
ASSOCIATES, P.C., a New Mexico
professional corporation; and MARK
F. BEVAN, M.D.,

                    Plaintiffs,

vs.

MERCY MEDICAL CENTER
OF DURANGO, a Colorado
not-for-profit corporation,

                      Defendant.

## MEMORANDUM OPINION AND ORDER
## DENYING MOTION TO MODIFY
## STIPULATED AMENDED PROTECTIVE ORDER

THIS MATTER is before the Court on an Order of Reference [Doc. 242]. The Order of Reference concerns Plaintiff Dr. Mark Bevan's ("Bevan") Motion to Modify Stipulated Amended Protective Order [Doc. 235]. Bevan's motion is opposed. The Court considered the motion, response in opposition [Doc. 240], and reply [Doc. 243].

### Background

So as to facilitate the discovery process, reduce the costs of litigation and protect very sensitive and confidential information, the parties, Four Corners Nephrology Associates, P.C., Bevan, and Mercy Medical Center of Durango ("Mercy") negotiated and agreed to a Stipulated Amended Protective Order [Doc. 71]. The parties recognized that most of the material produced during the course of discovery would contain information constituting "trade secrets, confidential non-public information, commercial or proprietary information, competitively sensitive information,

financial information (including financial statements and tax returns), as well as personnel information." [Doc. 71, pp. 1-2]. The parties agreed that "all material produced or disclosed in discovery shall be treated by them as confidential information unless and until they mutually agree to treat such materials otherwise." [Doc. 71, p. 2, ¶ 1]. The parties recognized that the information that would be produced or obtained in discovery was entitled to special protection:

> The parties further agree that information may be produced that is highly confidential insofar as the information is of a highly sensitive nature and/or the disclosure of which could cause irreparable competitive injury.

[Doc. 71, p. 2, ¶ 2].

Recognizing that it was to their mutual benefit to protect information, and that entry into a protective order would substantially expedite the discovery process and reduce the costs of litigation, the parties agreed to a free exchange of information under specific terms and conditions.

The Stipulated Amended Protective Order established a reasonable process for identifying information that would be confidential, and the parties agreed that all documents and items produced during the course of this litigation, including answers to interrogatories, responses to requests for admission, responses to requests for production, subpoenas, declarations, affidavits and deposition testimony or transcripts, would be considered confidential information which the parties wished to protect. They freely entered into this agreement and the Stipulated Amended Protective Order was submitted to the Court. It was adopted by the Court and filed on September 1, 2006.

This Court's Memorandum Opinion and Orders [Docs. 118 and 205] and Final Summary Judgment [Doc. 207] granting summary judgment to Defendant Mercy were affirmed by the Tenth Circuit [Doc. 233]. Thus, this litigation is now at an end. Nonetheless, a court retains the power to modify a protective order even after termination of an underlying lawsuit. *See* United Nuclear Corp. v. Cranford Ins. Co., 905 F.2d 1424, 1428 (10th Cir. 1990)(as long as a protective order remains in

effect, the court that entered the order retains the power to modify it, even if the underlying suit has been dismissed).

After Bevan obtained the benefit of the bargain, that is, he kept his confidential information from being produced and from being publicly disclosed, he now seeks to modify the Stipulated Amended Protective Order to do exactly that which the parties agreed would not be done. Bevan is involved in a second lawsuit filed in the United States District Court, <u>Mark Bevan, M.D. v. DaVita, Inc.</u>, CIV 08-281 MCA/CG. The parties to that case entered into an arbitration agreement, and, therefore, the case was stayed while the underlying dispute went to arbitration.

Bevan now believes it is in his interest to use information gathered under the protections granted by and agreed upon by the parties and memorialized in the protective order in this case. Bevan now seeks to obtain and use deposition testimony taken in the present case and use it in the arbitration. Specifically, Bevan wishes to carve out of the prior confidentiality order depositions taken of Laura Mildenburger, Melody McCullum and Dr. Mark Saddler. He argues that modification of the protective order will make the arbitration proceedings less costly, as discovery taken in this case would be used in arbitration, and the prior depositions could be used as impeachment evidence. He also argues that Mercy Medical Center is not protecting its own interest, but seeking "to frustrate Dr. Bevan's access to and use of relevant information." [Reply, Doc. 243, p. 2]. Thus, Bevan equates Mercy's statement that it is "not interested in assisting" [Reply, Doc. 243, Ex. 2], with active obstruction. The Court disagrees.

This Court has no say in what is or is not discoverable or admissible in the arbitration proceeding. However, this Court has the right and , indeed the duty, to enforce protective orders it previously entered.

The Court finds it inappropriate for Bevan, who enjoyed the benefit of the protective order, to now avoid his responsibilities by seeking to unilaterally modify the terms of that protective order. A protective order is nothing more than a contract between the parties which has been approved by and is subject to enforcement by the court. It would violate the basic principles of contract law to allow one party to reap the benefits of the agreement and, yet, be released from obligations.

Contracts are enforceable unless they are unconscionable or procured by fraud or misrepresentation. In re Lopata's Estate, 641 P.2d 952 (Colo. 1982). There is no claim that Bevan entered into this agreement under duress, threat or coercion. There is no claim that the protective agreement is unconscionable. It is not the Court's function to second guess the parties' wisdom in entering into the protective order. Here, the parties entered into it because they believed it was in their mutual best interest to do so. The fact that Bevan now believes the protections guaranteed were imprudent does not relieve him of his obligations. *See* Medcorp, Inc. V. Pinpoint Technologies, Inc., No. 08-CV-00867-MSK-KLM, 2009 WL 3588362, at *3 (D. Colo. Oct. 23, 2009) ("The Protective Order was agreed to by the parties and entered as an Order, and the parties are required to comply with its terms, subject to their ability to seek its amendment").

The parties' agreement was confirmed by the Court and incorporated into an order. The Court may, indeed, modify the order when there is good cause. The Tenth Circuit holds that modification of a protective order is appropriate in situations where such modification "can place private litigants in a position they would otherwise reach only after repetition of another's discovery." United Nuclear Corp. v. Cranford Ins. Co., at 1428. In such circumstances:

> Modification can be denied only where it would tangibly prejudice substantial rights of the party opposing modification. Once such prejudice is demonstrated, however, the district court has broad discretion in judging whether that injury outweighs the benefits of any possible modification of the protective order.

4

Id..

In opposing the request for modification in this case, Defendant Mercy contends that it would be tangibly prejudiced by modification of the order, and further that modification would not place Bevan in a position in the arbitration proceedings which he "would otherwise reach only after repetition" of the discovery obtained in this litigation. Bevan, on the other hand, argues that Mercy has not shown that it would be prejudiced if the protective order is modified.

The Court finds that Mercy would be prejudiced by modification of the Protective Order. It freely produced information under an express promise of confidentiality. After having relied on Bevan's promise, Mercy now faces having the earlier "promissory rug" pulled out from under it. Bevan seeks the modification in order to enforce a subpoena which he directed to his own attorney, demanding production of the depositions of DaVita employees Melody McCullum and Laura Mildenberger, and of Dr. Mark Saddler. Those depositions were taken for purposes of this case and are subject to the Protective Order.

Mercy asserts that it has an ongoing interest in protecting the materials it designated as confidential pursuant to the Protective Order, and that it will be hard-pressed to protect that confidentiality in the arbitration proceedings as it is not a party to those proceedings. This is an appropriate consideration. As a party to these proceedings, it has standing to object. If confidential information is released for the arbitration, a proceeding in which Mercy is not a party, it loses control of the documents and information and can no longer be assured of their confidentiality.

The fact that released documents would be subject to any protective order entered by arbitrator Luis Stelzner is no guarantee of confidentiality because, just as this Court has authority to modify its protective order even after the case is closed, so, too, Mr. Stelzner has the authority to modify his order. The Uniform Arbitration Act, NMSA (1978), § 44-7A-19(e) give arbitrators

authority to issue protective orders "to the extent a court could if the controversy were the subject of a civil action in this state." Id.[1] It follows that since a court can modify a protective order, even after the case is closed, United Nuclear, an arbitrator, having the same authority relating to protective orders as a court, could similarly modify the protective order and release confidential information. Moreover, as Mercy is not a party to the arbitration, it would be hard pressed to protect its interests should anyone, party or collateral party, seek to modify arbitrator Stelzner's order.

In United Nuclear, the Tenth Circuit permitted modification in part because the defendants "are parties to the collateral suits" and therefore "have both the interest and standing to raise in those courts [here, in arbitration proceedings] any relevancy or privilege objections to the production of any materials." United Nuclear, at 1428-29. Such is not the case here, as Mercy is not a party to the arbitration.

Mercy has already been prejudiced in that after Bevan's claims against it and Bevan's appeal were resolved, it has had to enter a new fray, incur new expenses and fees, and appear in the arbitration proceedings to protect interests it thought were secured by its agreement with Bevan. If the Protective Order is modified, Mercy will be forced to continue monitoring those proceedings and will be put to further expense and attorney time to oppose any disclosures, now or in the future, that might be attempted. Mercy points out that Bevan's actions in raising his dispute with DaVita in a public forum, when it properly belonged in private arbitration, raises questions about Bevan's enthusiasm for the confidentiality provisions to which he previously agreed, apparently with some reluctance.

---

[1] Colorado, too, adopted the Uniform Arbitration Act, Colo. Rev. Stat. Ann. § 13-22-217(5), and with this same provision.

Bevan characterizes as "wild accusations" [Doc. 243, p. 9] Mercy's concern that confidential materials may be exposed if the request to modify is granted. However, the Court does not impugn Bevan's integrity by acknowledging Mercy's legitimate interest in retaining the benefit of bargained-for confidentiality. In addition, there are reasons based on sound public policy for enforcing the parties' bargain:

> A court should be hesitant to modify protective orders for matters unrelated to the litigation in front of it because otherwise, in the long run, parties may begin to distrust protective orders. Discovery, in turn, will become more complicated and expensive and settlements will be more difficult. A natural feeling of unfairness arises when the rules are modified during the middle of the game, especially without very good cause.

SmithKline Beecham Corp. v. Synthon Pharmaceuticals, Ltd., 210 F.R.D. 163, 166 (M.D.N.C. 2002)(Internal citations omitted).

Bevan further asserts that Mercy failed to demonstrate that anything contained in the three depositions constitutes confidential information. But, Mercy has no such burden; rather, it has a right to rely on the confidentiality to which Bevan agreed, unless Bevan can convince the Court to modify the agreement. "[T]he party seeking modification [of a protective order] bears the initial and overall burden of persuasion." SmithKline Beecham Corp., at 168 (rejecting argument that the party opposing modification of a protective order has the duty to prove the confidentiality of the information).

Mercy also points out that this is not a situation where modification of the Protective Order will place Bevan in a position he would "otherwise reach only after repetition of another's discovery." Repetition of discovery already taken in this litigation will not occur in the arbitration proceeding, because Bevan is limited to three depositions in the arbitration proceeding whether or not he is successful in modifying the Protective Order. Furthermore, Bevan has stated that he will

depose Ms. Mildenburger again in any event. Thus, few resources, if any, will be saved by permitting Bevan to use the three depositions in the arbitration. "Federal civil discovery may not be used merely to subvert limitations on discovery in another proceeding." United Nuclear, at 1428 (internal punctuation omitted).

Bevan says that he wishes to use the prior deposition testimony for impeachment purposes, and that it would be "fundamentally unfair" [Doc. 243, p. 3] to deny him use of the deposition transcripts for that purpose. He fails to acknowledge, however, that he voluntarily entered into an agreement by which he relinquished any right he may have had to use the deposition testimony. It is not unfair to hold a party to a bargain freely entered.

The Court finds that Mercy would be prejudiced if Bevan's motion to modify is granted, and the Court will exercise its "broad discretion in judging whether that injury outweighs the benefits of any possible modification of the protective order," United Nuclear, at 1428, by enforcing the parties' agreement to keep these materials confidential. Where "modification of the . . . protective order would substantially prejudice the contractual rights of the defendants," such modification will be denied. Cunningham v. Subaru of America, Inc., 155 F.R.D. 205, 208 (D. Kan. 1994), *aff'd*, 54 F.3d 787 (10th Cir. 1995).

Finally, the Court rejects Bevan's argument that Mercy is being an obstructionist. After years of litigation and the likely expenditure of hundreds of thousands of dollars in time or attorney fees, it is understandable that Mercy is "not interested" in assisting Bevan. However, an "unwillingness to assist" does not equate to active obstruction. Mercy is before the Court to protect its own interests, not to obstruct Bevan. While the protection of its own interests may frustrate Bevan, Mercy's conduct is not an obstructionist.

The Court finds no basis to modify the Stipulated Amended Protective Order, and, therefore, DENIES Bevan's request.

IT IS SO ORDERED.

*Lorenzo F. Garcia*
Lorenzo F. Garcia
United States Magistrate Judge